IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                 Cr. No. 21-484 KG

DANIEL ARMANDO JIMENEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On April 2, 2021, a Grand Jury returned an Indictment against Defendant Daniel Jimenez for one count of possession with intent to distribute methamphetamine and one count of knowingly carrying a firearm in furtherance of a drug trafficking crime. (Doc. 17) at 1; (Doc. 18). On May 6, 2021, Mr. Jimenez filed the instant Motion to Suppress (Motion) (Doc. 23). The Motion is now fully and timely briefed. *See* (Doc. 24, Response). On June 22, 2021, the Court held an evidentiary hearing to assess the factual circumstances supporting Mr. Jimenez's Motion. (Doc. 34). Christopher Solis and Kristopher Jarvis represented the United States, and Amanda Skinner represented Mr. Jimenez, who was present at the hearing. *Id.* at 1. Las Cruces Police Department (LCPD) Officer Jaime Aguilera testified on behalf of the United States. *Id.* at 2-5.

At the close of the hearing, the Court took Mr. Jimenez's Motion under advisement. *Id.* at 8. This written Order detailing the Court's decision follows. After review of the parties' briefs, the testimony, the evidence admitted at the hearing, oral argument by counsel, and the controlling law, the Court denies Mr. Jimenez's Motion to Suppress Evidence (Doc. 23).

*I. Factual Findings*

On November 14, 2020, around 10:35 p.m., the LCPD received a report that a white sedan was parked in the middle of an apartment complex parking lot at 1150 South Triviz Drive. *See* Transcript of June 22, 2021, Motion Hearing at 13-14.[1] The caller reported that the car was idling in a space not designated for parking with its brake lights "tapping on and off." *See* Tr. at 14, 18. Dispatch further informed the responding officer that the vehicle had been in this location for approximately thirty minutes. *See* Tr. at 14. LCPD Officer Jaime Aguilera responded to the call. *See* Tr. 13; *see also* Gov. Ex. 1 at 00:00-01:05.

Officer Aguilera is familiar with this apartment complex for its high density of burglaries and narcotics crime, classifying it as a "high-crime area" of the city. *See* Tr. at 12-13. In the past, Officer Aguilera has been dispatched to this apartment complex for calls reporting domestic disputes, automobile burglaries, suspicious activity, and drug overdoses. *See* Tr. at 12, 19. In Officer Aguilera's experience, automobile burglaries typically involve a "get-away vehicle" that does not park in a designated parking space and remains "turned on," to facilitate a quick exit from the scene of the crime. *See* Tr. at 19.

When he arrived at 1150 South Triviz on the evening of November 14, 2020, Officer Aguilera located a silver sedan parked in the middle of the parking lot, positioned diagonally. *See* Tr. at 16; *see also* Gov. Ex. 1 at 01:05-01:20. The brake lights on the vehicle were not illuminated but its engine was running. *See* Tr. at 16, 18; *see also* Gov. Ex. 1 at 01:10-01:25. Officer Aguilera observed that the vehicle impeded traffic flow through the parking lot and was not parked in a designated space. *See* Tr. at 16.

---

1. The Court's citation to the hearing transcript refers to the court reporter's original unedited version. Any final transcript may contain slightly different page numbers.

Within view of the sedan, Officer Aguilera parked his patrol unit approximately fifty yards away, in an adjacent parking lot. *See* Tr. at 14-15, 17; *see also* Gov. Ex. 1 at 00:00-01:00. He did not activate his vehicle's emergency lights or sirens. *See* Tr. at 15; *see also* Gov. Ex. 1 at 00:00-01:00. Officer Aguilera then approached the sedan on foot, outfitted in his patrol uniform with his weapon holstered and his lapel camera turned on. *See* Tr. at 16, 19; *see also* Gov. Ex. 1 at 00:00-01:25. Officer Aguilera's lapel camera captured the encounter. *See* (Doc. 32) (finding no objection on Court's review of lapel camera footage).

When he arrived at the vehicle's driver-side window, Officer Aguilera saw Defendant Daniel Jimenez in the driver's seat. *See* Tr. at 16; *see also* Gov. Ex. 1 at 01:30. Officer Aguilera shined his flashlight on the vehicle and saw Mr. Jimenez talking on his cellphone. *See* Tr. at 16-17; *see also* Gov. Ex. 1 at 01:30. In his right hand, Officer Aguilera observed Mr. Jimenez holding a small knotted bag, roughly the size of a golf ball, containing a white powdery substance. *See* Tr. at 16-17, 20; *see also* Gov. Ex. 1 at 01:30-01:36. Based on his training and experience, Officer Aguilera recognized the substance as methamphetamine. *See* Tr. at 16-17, 20-21. In support of this conclusion, Officer Aguilera reasoned that the packaging and crystal-like appearance of the substance were characteristic of methamphetamine. *See* Tr. at 20-21. Officer Aguilera also recognized the volume of the suspected narcotics as consistent with distribution, rather than an amount possessed for personal use. *See* Tr. at 21.

Shortly after he arrived at the driver-side window, Mr. Jimenez noticed Officer Aguilera and quickly concealed the bag of suspected methamphetamine. *See* Tr. at 17-18, 22-23; *see also* Gov. Ex. 1 at 01:30-01:36. Once the bag was out of sight, Mr. Jimenez rolled down his window. *See* Tr. at 22; *see also* Gov. Ex. 1 at 01:36-01:40. Officer Aguilera asked Mr. Jimenez to step out of the car and explained that a caller reported a suspicious vehicle idling in the parking lot for

thirty minutes. *See* Tr. at 14-23; *see also* Gov. Ex. 1 at 00:00-02:16. While Officer Aguilera was speaking, Mr. Jimenez continued talking on his cellphone. *See* Tr. at 14-23; *see also* Gov. Ex. 1 at 00:00-02:38.

Officer Aguilera then asked Mr. Jimenez a second time to exit his vehicle. *See* Tr. at 22; *see also* Gov. Ex. 1 at 00:00-02:38. In response, Mr. Jimenez continued to talk on his cellphone, rolled up his window, and cracked open the driver-side door. *See* Gov. Ex. 1 at 02:38-04:57. Officer Aguilera put his hand on the door to open it further and again requested that Mr. Jimenez exit the vehicle. *See id.* In addition, Officer Aguilera explained that he had been dispatched to this area before to investigate automobile burglaries. *See* Tr. at 14-23; *see also* Gov. Ex. 1 at 00:00-02:38.

Around this time, LCPD Officer Montoya joined Officer Aguilera at Mr. Jimenez's driver-side window. *See* Tr. at 22-23; *see also* Gov. Ex. 1 at 03:30-03:50. Officer Montoya was outfitted in his patrol uniform with his weapon holstered, and he did not activate his vehicle's emergency lights or sirens on the scene. *See* Tr. at 23. Officer Montoya then asked Mr. Jimenez to exit the vehicle. *See* Tr. at 24; *see also* Gov. Ex. 1 at 03:58. In quick succession, shortly thereafter, Officer Aguilera also asked Mr. Jimenez to step out of the vehicle. *See* Gov. Ex. 1 at 02:38-03:52. Officer Montoya then stated that if Mr. Jimenez did not comply, they would forcefully remove him from the driver's seat. *See* Tr. at 24. In response, Mr. Jimenez exited the vehicle and put his hands in his pockets. *See* Tr. at 24. The officers promptly handcuffed him. *See* Tr. at 24; *see also* Gov. Ex. 1 at 04:00-05:32.

Once he was handcuffed, the officers escorted Mr. Jimenez to Officer Montoya's patrol unit. *See* Tr. at 26. Around this time, a woman identified as "Lulu" exited her apartment and requested to move the vehicle. *See* Gov. Ex. 1 at 05:30-08:00. The officers declined to let her

4

move Mr. Jimenez's car. *See id.* Shortly thereafter, the officers conducted a pat-down search on Mr. Jimenez and placed him in Officer Montoya's patrol unit. *See id.*; *see also* Tr. at 27.

Within five minutes of being placed in the patrol unit, Officer Aguilera observed that Mr. Jimenez dispersed a white substance on his seat and on the floorboard directly in front of him. *See* Tr. at 27. The substance also appeared on Mr. Jimenez's lap, pants, and hands. *See* Tr. at 27. As a result, the officers moved Mr. Jimenez to Officer Aguilera's patrol unit to preserve the spilled substance in Officer Montoya's vehicle. *See* Tr. at 28. From his training and experience, Officer Aguilera recognized the substance as consistent with methamphetamine. *See* Tr. at 28.

Officer Aguilera then received notice from dispatch that Mr. Jimenez had an active warrant for his arrest for concealing identity issued by municipal court. *See* Tr. at 29. Consequently, Officer Aguilera placed Mr. Jimenez under arrest and executed the warrant. *See* Tr. at 29. The officers then searched Mr. Jimenez's vehicle. *See* Tr. at 31. During the search, the officers located methamphetamine, a firearm, and ammunition. *See* Tr. at 31. Mr. Jimenez was subsequently charged in this case for the items recovered from his vehicle. *See* (Doc. 18).

*II. Standard*

For evidence to be suppressed, the defendant must first demonstrate that his Fourth Amendment rights have been violated. *United States v. Torres-Castro*, 470 F.3d 992, 999 (10th Cir. 2006). After the defendant demonstrates that the Fourth Amendment was implicated, "the government has the burden of proving its warrantless actions were justified." *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020); *see also United States v. Torres*, 987 F.3d 893, at 901 (10th Cir. 2021) (citing *United States v. Ybarra Cruz*, 982 F.3d 1284, 1291 (10th Cir. 2020)) (clarifying district court's standard of review for motion to suppress). If a warrantless search and seizure are unjustified, the government must "prove that the evidence sought to be suppressed is

5

not 'fruit of the poisonous tree,' either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000).

In deciding a motion to suppress, "the district court must assess the credibility of witnesses and determine the weight to give to the evidence presented...." *Goebel*, 959 F.3d at 1265. When making factual findings on a motion to suppress, the Court "evenhandedly" considers the evidence. *Torres*, 987 F.3d at 899 (citing *United States v. Finefrock*, 668 F.2d 1168, 1171 (10th Cir. 1982)). Any "inferences the district court draws from that evidence and testimony are entirely within its discretion.". *Goebel*, 959 F.3d at 1265 (citing *United States v. Andrus*, 483 F.3d 711, 716 (10th Cir. 2007); *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004)).

*III. Discussion*

Mr. Jimenez makes two arguments in support of his Motion. (Doc. 23). First, he contends that Officer Aguilera lacked reasonable suspicion to approach his car and, thus, he was illegally seized. *Id.* at 3-9. Second, Mr. Jimenez asserts that Officer Aguilera's subsequent search of his vehicle was unjustified, both in the absence of probable cause and as an alleged "inventory search." *Id.* at 9-15. For each of these reasons, Mr. Jimenez requests that the Court grant his Motion and suppress the contraband discovered in his vehicle. *Id.* at 15.

In response, the United States asserts that Officer Aguilera possessed reasonable suspicion to initially detain Mr. Jimenez pending further investigation of the circumstances. (Doc. 24) at 4-9. Next, the United States argues that the warrantless search of Mr. Jimenez's vehicle was justified both under the automobile and the inventory exceptions. *Id.* at 9-15. As a

6

result, the United States requests that the Court deny Mr. Jimenez's Motion to Suppress. *Id.* at 15.

### A. Time of Seizure

The first step in ascertaining whether law enforcement violated an individual's Fourth Amendment right to be free from unreasonable seizure is to assess the time of seizure. A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). To determine whether an individual has been seized, courts consider "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

The Tenth Circuit has endorsed the position that officers are allowed "to make inquiries so long as they don't throw their official weight around unduly." *Id.* at 1264 (quoting *United States v. Tavolacci*, 895 F.2d 1423, 1425 (D.C. Cir. 1990)). As a result, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *United States v. Lopez*, 443 F.3d 1280, 1283 (10th Cir. 2006) (quoting *Bostick*, 501 U.S. at 434). Nonetheless, the analysis is fluid, in that "the nature of the police-citizen encounter can change— what may begin as a consensual encounter may change to an investigative detention if the police conduct changes and vice versa." *Id.* at 1284 (quoting *United States v. Zapata*, 997 F.2d 751, 756 n.3 (10th Cir. 1993)).

In *California v. Hodari D.*, the United States Supreme Court considered whether "a seizure occurs even though the subject does not yield." 499 U.S. 621, 626 (1991). Justice

Scalia, writing for the Court, concluded that "it does not." *Id.* In reaching this conclusion, Justice Scalia explained that even though the officer displayed "a show of authority," the defendant's non-compliance meant that "he was not seized until he was tackled." *Id.* at 629. More recently, the Supreme Court clarified that "a police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure." *Brendlin v. California*, 551 U.S. 249, 254 (2007).

In 2014, the Tenth Circuit applied both *Hodari D.* and *Brendlin* in reviewing a challenge to a defendant's motion to suppress physical evidence. *See United States v. Mosley*, 743 F.3d 1317 (10th Cir. 2014). The Tenth Circuit synthesized the Supreme Court's rulings, explaining that "when an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen submits to the assertion of authority." *Id.* at 1325; *see also United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) (explaining that "under *Hodari D.*, a suspect who is not physically restrained is seized under the Fourth Amendment when an officer shows his authority and the suspect submits to that authority").

The Tenth Circuit continued to explain that "[i]n determining whether particular conduct constitutes submission to authority, we must examine the totality of the circumstances—the whole picture." *Mosley*, 743 F.3d at 1325. "Submission under *Hodari D.* requires, at minimum, that a suspect manifest compliance with police orders." *Id.* at 1326. In reaching this determination, the court considers "whether a citizen has submitted to authority by examining the view of a reasonable law enforcement officer under the circumstances." *Id.*

Here, Mr. Jimenez asserts that he was seized when Officer Aguilera parked his patrol unit on the scene and approached his vehicle. (Doc. 23) at 5. However, the Supreme Court has cautioned that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434. Most notably, the circumstances do not evidence that Officer Aguilera's arrival on the scene would render a reasonable person to believe they were not free to leave. *See Lopez*, 443 F.3d at 1283 (explaining that "analysis of the seizure issue focuses on assessing the encounter from the perspective of a reasonable person in [defendant's] position").

Indeed, Officer Aguilera parked several yards behind Mr. Jimenez, did not activate his lights or sirens, and approached Mr. Jimenez on foot, with his weapon holstered. Moreover, Officer Aguilera's patrol unit was parked in an adjacent parking lot, separated by a barrier that prevented vehicle traffic between where he was parked and where Mr. Jimenez was located. These facts illustrate a non-threatening encounter. *See Hernandez*, 847 F.3d at 1264 (finding that pulling alongside pedestrian "in [] police cruiser" and "asking him questions ... was not a seizure"). Simply stated, Officer Aguilera was permitted to park his patrol unit several yards behind the idling vehicle and approach on foot to investigate the circumstances without running afoul of the Fourth Amendment.

In support of his position to the contrary, Mr. Jimenez cites caselaw involving routine vehicle traffic stops. *See* (Doc. 23) at 7 (citing *inter alia United States v. McSwain*, 29 F.3d 558, 559-60 (10th Cir. 1994) (analyzing reasonable suspicion to continue detention during traffic stop) and *United States v. Trestyn*, 646 F.3d 732, 741-42 (10th Cir. 2011) (applying "investigative detention" standard to "routine traffic stop")). These cases are inapposite to the present circumstances, however, because when an officer initiates a traffic stop by activating his

9

emergency equipment, a seizure has already occurred for purposes of the Fourth Amendment. *See Trestyn*, 646 F.3d at 742. Thus, traffic stops, from their inception, require reasonable suspicion to support the officer's conduct. Conversely, here, Officer Aguilera approached Mr. Jimenez on foot to inquire about his presence in the area, an approach that lacks the authoritative effect of activating emergency equipment. *Cf. McSwain*, 29 F.3d at 562 n.1 (explaining that "no consensual encounter" occurs when officer "pulled over" suspect's vehicle "and began asking him questions and requesting his documentation, indicating 'to a reasonable person that he was not at liberty to ignore the police presence and go about his business'"). As a result, the Court declines to accept Mr. Jimenez's position that he was seized when Officer Aguilera appeared beside his vehicle to inquire about his presence in the parking lot.

On the contrary, Mr. Jimenez's conduct fits squarely within the circumstances contemplated by *Hodari D.* and its progeny. Under *Hodari D.*, a seizure in the absence of physical force occurs only after the individual submits to the officer's show of authority. *See Mosley*, 743 F.3d at 1325 (applying *Hodari D.* in Tenth Circuit). Officer Aguilera, and later, Officer Montoya, requested Mr. Jimenez exit his vehicle a total of five times. On the sixth request, after Officer Montoya stated that he would use force to facilitate his removal, Mr. Jimenez stepped out of the vehicle. Thus, applying *Hodari D.*, Mr. Jimenez was seized when he acquiesced to the officers' show of authority and exited his vehicle.

### B. Reasonable Suspicion Calculus

Next, having ascertained the time of Mr. Jimenez's seizure, the Court examines whether Officer Aguilera possessed reasonable suspicion to justify the seizure. The reasonable suspicion calculus is assessed through a two-step framework. First, "the stop must be 'justified at its inception'" and, second, "the resulting detention must be reasonably related in scope to the

circumstances that justified the stop in the first place." *United States v. Pena-Montes*, 589 F.3d 1048, 1052 (10th Cir. 2009).

Under the first requirement, the stop is justified when an officer "has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020). While "a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). The standard "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 1188 (quoting *Navarette*, 572 U.S. at 402). An officer, therefore, is permitted to "make commonsense judgments and inferences about human behavior." *Id.*

Among other things, an officer can consider the characteristics "of the location," and "the fact that conduct occurs in an area known for criminal activity." *United States v. McHugh*, 639 F.3d 1250, 1258 (10th Cir. 2011). In addition, "the fact that an incident occurred late at night or early in the morning is relevant to the *Terry* analysis." *Id.* at 1257. The reasonable suspicion calculus can also rely, in part, on a suspect's failure to comply with an officer's request to acquiesce. *See Salazar*, 609 F.3d at 1068-69 (weighing defendant's failure to immediately yield to law enforcement in reasonable suspicion calculus).

Under the second requirement, the Court considers "whether the precautionary steps taken by an officer were reasonable" utilizing an objective standard—"would the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate." *Mosley*, 743 F.3d at 1329. Indeed, "under certain

11

circumstances, the steps officers may permissibly take to protect their safety include drawing their weapons, placing a suspect in handcuffs, or forcing a suspect to the ground." *Id.* The detention must "last no longer than is necessary to effectuate the purpose" of the investigation. *United States v. Moore*, 795 F.3d 1224, 1228 (10th Cir. 2015).

Here, Officer Aguilera knew the area where Mr. Jimenez was parked had a high rate of criminal activity, including reports of automobile burglaries. In addition, Mr. Jimenez's vehicle was parked in the middle of the parking lot, not in a delineated parking space, with the engine running. Dispatch communicated to Officer Aguilera that the vehicle was in this position for over thirty minutes, around 10:30 at night. From Officer Aguilera's training and experience, Mr. Jimenez's vehicle satisfied the description of a get-away car, to facilitate quick flight from the scene of a crime. As Officer Aguilera tried to investigate, Mr. Jimenez's subsequent conduct compounded his suspicions—as he continued to talk on his cellphone, refused to exit the vehicle, hesitated before giving his ID, and rolled up his window.

Most significantly, Officer Aguilera immediately identified a white crystal-like substance in Mr. Jimenez's hand as he approached the car. In addition, as soon as Mr. Jimenez spotted Officer Aguilera, he concealed the bag in his vehicle, raising suspicion about whether the bag's contents were innocuous.

To combat the value of this evidence, Mr. Jimenez suggests that Officer Aguilera's testimony that he viewed the bag when he first arrived at Mr. Jimenez's window was incredible. The Court disagrees. Indeed, the video evidence clearly corroborates Officer Aguilera's testimony. The bag is visible on the lapel camera footage before Officer Aguilera arrives at the vehicle and for nearly five seconds as he shines his flashlight on the driver-side door. The video also captures Officer Aguilera later advising Officer Montoya, while still on the scene, that he

identified a bag of what he suspected was methamphetamine in Mr. Jimenez's hand upon arrival. The Court, therefore, finds Officer Aguilera's testimony credible.

Mr. Jimenez further contends that because the caller reported to police dispatch that a white car was idling in the parking lot, and his car was silver, Officer Aguilera lacked reasonable suspicion to approach his vehicle. This argument is defeated by the Court's conclusion that Officer Aguilera's initial approach to Mr. Jimenez's vehicle did not implicate the Fourth Amendment and, as a result, he did not need reasonable suspicion to justify the encounter. On the contrary, reasonable suspicion was only required when Mr. Jimenez was detained after he submitted to the officers' demands. Accordingly, Mr. Jimenez's argument contesting the facts that supported Officer Aguilera's initial presence on the scene is discredited by the subsequent suspicious circumstances that justified his detention.

In sum, the time of night, the high-crime area, the vehicle's consistency with a get-away car, the bag of suspected narcotics in plain view, Mr. Jimenez's prompt concealment of the bag, and his subsequent behavior support the premise that Officer Aguilera possessed reasonable suspicion to briefly detain Mr. Jimenez to investigate. Thus, the totality of the circumstances illustrate that his brief detention was reasonable under the Fourth Amendment. Consequently, the first step of the reasonable suspicion calculus is readily satisfied.

Next, the Court examines whether the scope of force used to detain Mr. Jimenez was reasonable under the circumstances. After Mr. Jimenez exited the vehicle, he was handcuffed and escorted to the police cruiser. Mr. Jimenez's detention in the police cruiser was supported by his refusal to submit to police commands and his attempted concealment of evidence while seated in his own vehicle. Importantly, the entirety of his investigative detention lasted less than ten minutes before Officer Aguilera confirmed the existence of outstanding arrest warrants. The

Court concludes that both the length and the manner of Mr. Jimenez's detention were supported by officer safety reasons and the preservation of evidence. Accordingly, each component of the two-part inquiry in considering reasonable suspicion supports Mr. Jimenez's brief investigative detention. The Court, therefore, is satisfied that Mr. Jimenez's seizure was constitutional.

### C. The Vehicle Search

Lastly, the Court considers the constitutionality of law enforcement's search of Mr. Jimenez's vehicle. Probable cause to search a vehicle exists "if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Hawley*, 660 Fed. Appx. 702, 707 (10th Cir. 2016) (citing *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013)). Once an officer possesses probable cause to search, "the officer is empowered to search the entire vehicle[.]" *Moore*, 795 F.3d at 1231.

The existence of probable cause supporting the search of a vehicle is commonly referred to as the "automobile exception." *See United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008) (explaining that "'automobile exception' to the warrant requirement permits law enforcement officers who have 'probable cause to believe a car contains contraband to search the car without first obtaining a search warrant'" (internal citation omitted)). The rationale "for the automobile exception is based on both the inherent mobility of cars (as it often impracticable to obtain a warrant before a car can be driven away) and the fact that there is a reduced expectation of privacy with motor vehicles." *United States v. Beckstead*, 500 F.3d 1154, 1165 (10th Cir. 2007).

Here, Officer Aguilera had probable cause to suspect that evidence of criminal activity was being concealed in Mr. Jimenez's vehicle. After he witnessed Mr. Jimenez holding the bag of suspected methamphetamine, the lapel camera footage depicts Mr. Jimenez concealing the bag

between the driver's seat and the center console. Officer Aguilera, therefore, was justified in concluding there was a fair probability that the vehicle contained evidence of contraband.

In combatting this conclusion, Mr. Jimenez proffers two arguments. First, at the hearing, counsel asserted that the methamphetamine discovered in Officer Montoya's police cruiser should have dispelled any suspicion that methamphetamine was concealed in Mr. Jimenez's car. Thus, Mr. Jimenez contends, there was no further reason to search his vehicle once the methamphetamine was revealed in Officer Montoya's cruiser.

On the contrary, the Court finds the methamphetamine dispersed in the patrol unit corroborated Officer Aguilera's suspicion that what he saw in Mr. Jimenez's hand was narcotics, rather than detracted from it. Indeed, after he saw the methamphetamine in the police cruiser, Officer Aguilera was further justified in believing there was a fair probability that evidence of contraband would be discovered in Mr. Jimenez's vehicle. If Officer Aguilera harbored any doubts about what he saw, Mr. Jimenez's subsequent behavior confirmed that he was trying to conceal evidence. Consequently, the Court rejects Mr. Jimenez's argument that the methamphetamine in Officer Montoya's police cruiser dispelled probable cause to search his car.

Next, Mr. Jimenez asserts that the search of his vehicle was invalid under the inventory exception. (Doc. 23) at 9. However, justification for an inventory search to tow the vehicle is only necessary in the absence of probable cause. Resultingly, because Officer Aguilera's search of the vehicle was supported by probable cause, the Court need not consider whether an inventory search incident to impounding the vehicle renders the conduct constitutional. Moreover, even if the Court did consider the constitutionality of the search under the inventory exception, an officer's "subjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional." *Whren v. United States*, 517 U.S. 806, 813 (1996). The Court,

therefore, denies Mr. Jimenez's request to find the inventory search was a pretextual excuse to inspect the vehicle for evidence of contraband. *Accord id.* (explaining that "officer's motive [does not] invalidate[] objectively justifiable behavior under the Fourth Amendment"). Instead, the Court concludes the search was supported by a fair probability that evidence of contraband would be uncovered.

*IV. Conclusion*

In conclusion, Officer Aguilera possessed reasonable suspicion to facilitate the investigatory detention when he approached Mr. Jimenez's vehicle and saw the bag of suspected methamphetamine. Accordingly, Officer Aguilera possessed the requisite constitutional prerequisite to briefly detain Mr. Jimenez immediately upon approaching his vehicle. Mr. Jimenez's subsequent conduct, and the circumstances surrounding the vehicle in the parking lot, further corroborated Officer Aguilera's suspicions. Moreover, under *Hodari D.*, Mr. Jimenez was seized when he acquiesced to law enforcement's commands to exit the vehicle. Thus, Officer Aguilera possessed reasonable suspicion to facilitate Mr. Jimenez's detention before he was seized, satisfying the commands of the Fourth Amendment.

Finally, Officer Aguilera possessed probable cause to search Mr. Jimenez's vehicle. Most notably, there was a fair probability that Mr. Jimenez hid the bag of suspected narcotics between the driver's seat and the center console when he noticed Officer Aguilera. In addition, the officers were aware that Mr. Jimenez dispersed methamphetamine in the police cruiser when they began their search. After possessing probable cause to facilitate the search, the officers were not required to comply with the inventory search exception before searching Mr. Jimenez's vehicle. Thus, with probable cause to search and reasonable suspicion to initially detain Mr. Jimenez, his Motion to Suppress is properly denied.

The Motion to Suppress Evidence (Doc. 23) is denied.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE